GALVESTON AND HOUSTON INVESTMENT COMPANY v. M. L.
GRYMES ET AL.

No. 886.  Decided June 28, 1901.

**1. Usury—Contract.**

In determining the question of usury the court must give to the terms of the contract, if fairly susceptible of it, a construction that will make it legal, but has no right to depart from the terms in which it is expressed to make legal a contract which, in the form the parties have given it, is unlawful.  (P. 613.)

**2. Same.**

The compensation for the use or forbearance of money allowed in this State (Revised Statutes, article 3103) is not to exceed the rate of 10 per cent per annum for the period that the debtor has its use.  (P. 613.)

**3. Same—Installment Notes—Level Payments.**

Where payments are arranged in installments running through ten years, and the total amount arrived at by adding to the principal 55 per cent thereof, being the interest computed at 10 per cent per annum on the basis of settlement of the principal by ten equal annual partial payments, is then divided into 120 installment notes for equal monthly payments, the contract is usurious, the debtor having had the use of the principal for a less time on the monthly than on the annual payment plan and being charged full lawful interest for more time than he had the money. Crider v. Association, 89 Texas, 597, distinguished.  GAINES, C. J., dissents. (Pp. 611-615.)

**4. Same—Dissenting Opinion.**

In the opinion of Chief Justice GAINES the parties could contract for discharge of the debt by monthly partial payments which should be applied first to the satisfaction of all interest accrued to date at the rate of 10 per cent, applying balance only on principal; and an agreement for its discharge by 120 equal monthly installment notes, which did not, when so applied first to the monthly interest, more than pay the principal and interest at 10 per cent was not usurious; the contract actually made (the notes) was one which they could lawfully make. and the method by which they arrived at the amounts was not material. (Pp. 615-617.)

ON MOTION FOR REHEARING.

**5. Supreme Court—Disqualification of Judge.**

A justice of the Supreme Court is not disqualified from sitting in a case by the fact that he participated in the decision below, being then a member of the Court of Civil Appeals.  (P. 618.)

ERROR to the Court of Civil Appeals for the First District, in an appeal from Harris County.

The investment company sued Grymes and another and appealed from a judgment for defendants; this being affirmed it obtained writ of error.

*Hutcheson, Campbell & Meyer*, for plaintiff in error.—The court erred in its decision upon the first assignment of error wherein it held that the court below properly construed the contract between the parties and that it was correct in holding that the same was usurious. The error of the court, consisting both in misconception as to the facts in the record, and as to what does in law constitute usury, confounding,

as we understand it, the question as to whether the interest put in a
note violates the terms and expectations of the contracting parties, or
whether such interest so incorporated in the notes exceeded the maximum allowed by law.

As we interpret the opinion of the court, it seems to treat usury as
being any sum of interest put into the notes in violation of the terms
of the contract, whether such interest would violate the law regulating the highest rate of interest or not. We understand usury to
mean the charging in the notes such a rate of interest as exceeds the
highest rate which could be exacted under law without any regard to
the measure or rate of interest provided for in the agreement. If the
parties had stipulated for 6 per cent interest and the notes were drawn
for 10 per cent, there would be no usury; and so if the parties had
stipulated for a division of 120 payments, in each one of which it was
contemplated one-half should be principal and one-half should be interest, but in fact they carried the contract into notes where they put
two-thirds as interest and one-third as principal, yet if in fact the two-
thirds representing interest did not exceed the earned interest on the
entire debt, if computed to that date, and was not in excess of the rate
of interest which might have been legitimately charged on partial
payments, while it would be a violation of the contract, it would not be
a violation of the law of usury. And not only was the amount charged
less than the interest would be, calculated upon the partial payment
plan of 120 payments, but we have just had completed a calculation,
on the very construction which the court gives of the contract, which
shows that the interest is less than interest at 10 per cent calculated on
the plan which the court says the contract provided for, by the sum
of $42.41, and as to whether this is a fact or not, is a matter of calculation which can be made here.

The Court of Civil Appeals erred in failing to consider the two assignments of error, and to sustain the objection therein urged, that the
court below erred in not submitting the cause to the determination of a
jury, to decide the question of the rate of interest, the knowledge and intent of the parties, and as to whether risk, expense, and cost of constructing a house were honest and fair elements in the contract, or were
inserted with usurious intent. Henry v. Sampson, 2 Texas Civ. App.,
156; Call v. Palmer, 116 U. S., 98; Thurston v. Connell, 38 N. Y., 281;
Mitchell v. Napier, 22 Texas, 128; Wolsley v. Jones, 84 Ala., 88; Pass
v. Patterson, 68 Miss., 310; collation of authorities in 27 Am. and Eng.
Enc. of Law, 47, at bottom, and p. 1048, notes 1 and 2 in cases cited;
Railway v. Gaither, 35 S. W. Rep., 179; Moore v. Moore, 3 S. W. Rep.,
285.

The Court of Civil Appeals likewise erred in not sustaining the
fourth and fifth assignments of error, set out on pages 15 and 16 of appellant's brief, reflecting the error of the court in not charging that
the transaction between the parties was a sale of property and not forbearance of a debt or the loan of money, and not within the contemplation of usury. Mills v. Crocker, 9 La. Ann., 334; Culver v. Bigelow, 43

Vt., 249; Burfield v. Jefferson, 78 Ga., 220; Matlock v. Cobb., 62 Miss., 43.

*R. L. Whitehead,* for defendants in error.—The construction given by the court to the contract was the proper and only construction that could be given to it when read in connection with the parol testimony introduced to show its illegality.

The contract shows that the money was to be returned in 120 monthly installments. The undisputed testimony shows that the rate agreed upon was 10 per cent; that of the amount set forth in the notes a sum equal to the 120th part of the principal was to be applied to the reduction of the principal every time a payment was made; that the interest was to be calculated for the full period of ten years upon the idea that every note would be paid when it matured, that is, monthly, and this interest added to the principal, the amount thus obtained to be divided to be divided by 120 to get the face of each note. That the appellant, in order to ascertain the face of the notes sued on, assumed that the defendant would pay on the principal 1-10 annually and the accrued interest, in one payment at the end of each year, and calculated interest on the full principal for 12 months, then deducted a payment equal to the accrued interest and 1-10 of the principal, used the remainder as a new principal, and repeated the process. By this method it is true that the total amount of interest for ten years would just equal 55 per cent of the principal, but the contract shows that the payments are to be made monthly, consequently the principal would be reduced twelve times in one year, instead of only once. There is no doubt that appellant is not entitled to interest on the payments after they are made, and by this method it collects interest on the full amount of principal for the first year, and for a full year's time, although the principal has been reduced by twelve monthly payments, and this process is continued each year, so that at the end of ten years appellant has collected $193.21 more than 10 per cent, and its contract is usurious.

BROWN, ASSOCIATE JUSTICE.—From the opinion of the Court of Civil Appeals in this case (50 Southwestern Reporter, 467) we copy the following conclusions of fact:

"Appellant entered into a written contract with the appellee on the 5th day of May, 1898, by which it agreed to sell to him a lot in Houston for $2160, and to erect on it a residence, as per plans and specifications presented by appellee through his architect, the contract for such building to be let to a contractor who should be required to enter into bond for its erection. It was further stipulated that when the bid of such contractor should be accepted, and the cost of the building thereby ascertained, appellant would sell and convey to appellee the lot, with the house thereon, for a sum equal to the price of the lot and the contract price of the house, including architects' fees, and that thereupon the appellee should pay 10 per cent of such sum, and that a sum equal to 30

per cent of the balance should be added thereto and appellee should give to appellant seventy-two notes for equal parts of the sum thus ascertained, each note being a monthly installment, or that 55 per cent of the sum unpaid should be added thereto and 120 notes of equal monthly installments thereof should be executed, the notes in either case to bear 10 per cent interest after maturity. The contract also stated: 'The said thirty or fifty-five per cent so added into the notes represents the interest on said deferred payments and all costs, trouble, and expense incurred by the company in the erection of said house and the risk during the same. And the said party of the second part (appellee) shall insure said house from the date of its completion in the interest of the party of the first part, as their interest may appear, during the time that the deferred payments are unpaid. Failure to do this, as well as failure * * * to pay any two notes, shall entitle the first party to declare said contract forfeited, and said notes mature, and entitle the said first party to sell said property under the provisions of this instrument.' The contract also made provisions for sale of property in case of default in payment, and gave the appellant the option to exact from appellee a deed of trust with power of sale when the conveyance should be executed. The house was built and delivered to Grymes, the cost of the house and price of the lot aggregating $4215.45, to which was added 55 per cent thereof, and for the sum of the two, 120 notes were executed by appellee, the first for $55.49 and the others for $55.44, payable monthly in succession, the first payable in one month and the last in 120 months or ten years from date, and bearing 10 per cent interest after maturity. Appellee paid the nineteen notes first falling due as they matured and sold the property to P. C. Byrne, who assumed those remaining unpaid, and thereafter paid nineteen of them; the total payments amounting to $2124.31. Default having been made in payment of others, appellant caused the property to be sold by trustee and bought it in for $1600, crediting the notes with that sum, and then brought this suit against appellee and Byrne to recover the balance of the notes unpaid, alleged to amount, with some expenses, to $2344.06. Byrne pleaded general denial and Grymes set up the defense of usury. The court instructed the jury that the contract was usurious and directed a verdict for plaintiff against Grymes for $640.14, which was returned, and plaintiff appeals."

The provisions of the Revised Statutes which relate to interest and usury are embodied in the following articles:

"Art. 3097. 'Interest' is the compensation allowed by law or fixed by the parties to a contract for the use or forbearance or detention of money."

"Art. 3103. The parties to any written contract may agree to and stipulate for any rate of interest not exceeding ten per cent per annum on the amount of the contract.

"Art. 3104. All written contracts whatsoever which may in any way, directly or indirectly, violate the preceding article by stipulating for a greater rate of interest than ten per cent per annum shall be

void and of no effect for the amount or value of the interest only; but the principal sum of money or value of the contract may be received and recovered."

To determine the question of usury in a contract, it must be tried by the statutory limitation of 10 per cent per annum for the use, forbearance or detention of the money for one year; if the interest contracted for exceeds that rate, it constitutes usury, no matter in what form the contract may be expressed. The court must give to the terms of the contract, if fairly susceptible of it, a construction that will make it legal, but has no right to depart from the terms in which it is expressed to make legal what the parties have made unlawful. Webb on Usury, p. 482; Archibald v. Thomas, 3 Cow., 284.

The question presented is, did the parties embrace in the 120 notes, for the use of the principal debt, a sum greater than the original debt would produce at 10 per cent per annum for the time the payer of the note had the use of the money? The original debt was $4215.45, to which $2318.45, interest, was added, aggregating the sum of $6533.39, which being divided into 120 equal parts, each note represented the principal and interest in the ratio that the principal and interest each bore to the whole amount; that is, each note represented 1/120th part of the principal, $35.12, and 1/120th part of the interest, $19.32. The payer of the notes agreed to pay $35.12 of the principal each month. By this method of payment, the sum of money for which the interest was allowed was gradually reduced, and to ascertain what amount of interest would be earned by the notes, we must calculate interest upon each note from its date to maturity, and all of the interest added will give the legitimate earnings of the sum loaned; or the average of time the different notes run will give five years and fifteen days, the time that the entire sum would be used. It is a simple calculation to ascertain the interest on each note at 10 per cent for the number of months that it is made to run, thus ascertaining the interest upon 120 notes, which, added, would give the total interest; or to calculate interest on $4215.45 for five years and fifteen days at 10 per cent per annum; the result in either case would be the sum of $2125.38, which is $193.17 less than the sum reserved for interest by the parties. This shows the transaction to be usurious.

Counsel for plaintiff in error have not suggested any method by which the interest can be calculated under the terms expressed by the 120 notes which would sustain them as lawful, but they have suggested several forms in which the parties could have made a legal contract embracing the same debt; of which the following two are the most plausible: (1) Consider the debt of $4215.45 as existing as a whole and treat each note as a partial payment upon the debt to be credited at maturity of the note, calculating the interest with a rest at each payment; (2) it is contended that the parties might have agreed—and that the contract should be so construed—that each note should represent the interest upon the whole sum up to the time that the note was payable,—that is, the parties, after adding the principal and interest

together and dividing the sum into 120 parts, might have agreed that the sum of each note should contain what would be the interest upon the whole sum for one month, the remainder to be credited upon the principal. These methods produce the same result. To test the two plans suggested, the interest must be calculated upon $4215.45 for each month, added to the principal, and the note maturing at the time be deducted, the balance constituting a new principal, until the $120 notes shall be thus applied as credits. The result would be a larger sum as interest than the amount reserved in this transaction, but after exhausting the notes as credits, there would remain unsatisfied about $250 of the original principal.

If the transaction was such as to render the intention of the parties doubtful, the court would adopt that construction which would attribute to them a legal intention, but we can not adopt any method for the solution of this question by which we must arrive at a different result from that shown by the contract, because it is impossible to conceive of the parties having an intention to use certain forms of contract that would produce a result different from that which they embodied in the contract actually made.

If, however, the court had the authority—in the absence of evidence —by construction to reform the contract of the parties, such construction is excluded in this case by the evidence offered on behalf of the plaintiff in error, that the parties arrived at the amount of interest which is embraced in the notes by considering the principal debt, $4215.45, payable in ten equal annual installments with 10 per cent interest from date, calculating the interest at 10 per cent per annum with rests at each annual payment; or to reach the same result, take the average of time that the payer would use the money, being five years and six months, and calculate the interest at 10 per cent upon the whole amount for that time. Either of the methods suggested would produce the amount of interest contracted for in this case, and, if the contract had been consummated upon that basis, it would not have been illegal, but when the parties came to express it in writing, the payments were so changed as to be monthly instead of annual, whereby the time that the money would be used by the defendant in error was reduced five months and a half; that is, the average of time upon the notes is five years and fifteen days. By this change in the time of payment, the basis of calculation was abandoned so that the contract itself as it was finally made is usurious.

This case differs from Crider v. Building and Loan Association, 89 Texas, 597, in this: In that case, the interest was not calculated and added into the notes, but the principal was divided into 72 parts and a note taken for each part, payable, the first in one month, and one at the end of the succeeding month for seventy-two months. The first note embraced 1/72 part of the principal and the interest upon the whole debt for one month, the second note embraced a like part of the principal and the interest for one month upon the balance of the debt, after deducting the first payment, and so on, reducing the principal

upon which interest was calculated by each monthly payment. In this way, the interest was paid monthly upon the amount of money that the maker of the notes had used during that month and for no more. This produced 10 per cent per annum, the same as if it had been calculated by the year. This court held that the contract was not void because the parties might contract to pay the interest by the month; but, to restate the difference between the two cases, in the one now before the court, the manner of payment imposes upon the payer a charge for more time than he had the money; by the contract in the other case, he paid only for the time it was used.

The judgments of the District Court and of the Court of Civil Appeals are affirmed.

*Affirmed.*

### DISSENTING OPINION.

Opinion Delivered June 28, 1901.

GAINES, CHIEF JUSTICE.—I am constrained to dissent from the conclusion of the majority of the court in this case. Leaving out any question as to risk incurred by plaintiff in error in making the contract to build the house, and treating it as a naked loan of money, I am of opinion that no more was charged for the use of the money than the 10 per cent per annum allowed by law. The opinion of the majority gives a full and accurate statement of the case in so far as is necessary to the determination of the question, save that the testimony of the parties to the negotiation which led to the consummation of the contract is not set out. The majority were evidently of the opinion that this was not material, and I am inclined to the same view. The negotiations which result in the execution of a written contract are merged in the writing and the contents of the instrument (or instruments) must be construed by its language, viewed in the light of the circumstances which surround the transaction.

Our statute prohibits contracts for interest at "a greater rate than 10 per cent per annum." Under such a statute, it is clear that it is lawful to lend money for one or more years and stipulate for the payment of the interest at the highest rate allowed by law at frequently recurring intervals of less than a year. Barnes v. Worlech, 3 Croke, 25; Myer v. Muscatine, 1 Wall., 384; Tallman v. Truesdell, 3 Wis., 391; Mowry v. Shurnway, 44 Conn., 493; Hawley v. Howell, 60 Iowa, 79; Goodrich v. Reynold, 31 Ill., 490; Cook v. Cartwright, 40 Ohio St., 248; Mowry v. Bishop, 5 Paige Ch., 98. Therefore, it would have been lawful for plaintiff in error to have lent the money to the defendant in error for ten years at the highest rate allowed by law and to have stipulated that the interest upon the entire amount of the principal should be paid at the end of each month. So it would have been lawful to have contracted for the payment of the interest upon the whole sum and also for the payment of a part of the principal at the end of the first month, and

for a like payment of interest on the balance of the principal and another installment of the principal at the end of the second month, and so on until the entire debt was discharged. So much we understand the majority opinion to concede. But such is not their construction of the contract. I understand their view to be that the contract for the loan stipulates that the monthly payments were not to be applied first to the interest for the month upon the unpaid principal and then the balance to the principal; but that only such proportion of the payment was to be appropriated to the interest as the interest upon the entire sum for ten years bore to the sum itself. I can not concur in this construction of the contract. If such was the intention of the parties, that intention is not clearly expressed. The language upon which stress is laid as leading to this conclusion will be hereinafter set out.

But to construe this language as indicating a proposal to stipulate that the payments should not be applied to the interest upon the whole of the principal due at their respective dates but only to a proportionate part thereof, as held in the majority opinion, is, as I think, with all due deference to my associates, to confuse a method of calculation with the terms of the contract itself. The testimony discloses nothing that was said during the negotiation between the parties, nor do I find anything in the contract itself, in which the negotiations were necessarily merged, which expressly declares the rule by which the payments should be applied. It is true the contract says that "the said thirty or fifty-five per cent per annum represents the interest on said deferred payments and all costs, trouble and expense incurred by the company and the risk during the same." The majority hold, and I am inclined to think correctly, that there was no cost, trouble, expense, etc., other than the mere loan of the money. Let it be treated therefore as if the contract read that the "thirty or fifty-five per cent represents the interest on the deferred payments." What the parties meant by "interest on the deferred payments" is not clear, but it seems to me that they intended merely to say that it represented the interest upon the money to be lent, and that they had no reference to the times at which the interest was to be paid. If they had meant that only upon payment of each installment the appropriation should be made first to the interest upon that installment only, the balance to the principal, they could easily have so expressed themselves. What the parties had in view was a loan of money for a long period of time, payable, principal and interest, in monthly installments, the plaintiff proposing to charge the highest rate of interest allowed by law, and the defendant agreeing to pay such interest. It was stated by the one and acquiesced in by the other that 55 per cent added to the principal and the sum divided by 120 would give the proper amount of each monthly payment under such a contract. Nothing was said as to the application of the payments, nor was it necessary that anything should be stipulated with reference thereto. By applying each monthly payment to the interest upon the whole of the principal then due, the contract was a legal one, and I think it should be so construed.

But there is another consideration to be weighed in the determination of this question. Let us, for illustration, suppose two cases. A lends C a sum of money to be repaid in equal monthly installments extending over a period of ten years and agrees that the interest, at the highest rate allowed by law, upon the amount of principal due at the end of each month, shall be then paid. A calculation is made upon this basis and notes are given for the monthly installments in such sum as upon the payment of all the notes will extinguish the debt under the contract agreed upon. I understand the majority to hold that this contract would be lawful. B lends C the same sum of money to be repaid in monthly installments running for the same period, the parties agreeing that the highest rate of interest allowed by law shall be charged upon the loan, but that only such proportion of the monthly installments shall be applied to the interest as the interest for the whole period bears to the principal; but in executing the notes for the several installments, each is given for the same amount, as in the case of the first supposed loan. I understand the majority to hold that the second contract, as evidenced by the several notes, is usurious. Now, as we have seen, interest is the compensation which the law allows to be charged for the use of money. Yet A and B each lend C the same sum of money and C gives each of them 120 notes for precisely the same amount for the payment of the loan with interest. A's loan is lawful, B's is usurious. If interest is compensation for the use of money, can it be that this first contract is legal and the second illegal as to the interest, when the same sum of money is lent in each case and is contracted to be repaid in 120 installments each of the same amount? The law looks to the substance of contracts and not to their form, and this principle is frequently applied in dealing with contracts claimed to be usurious. In determining the question of usury all devices are disregarded, and whenever the courts are satisfied that there is a charge contracted for merely for the use of money in excess of that allowed by law as interest, they treat it as usurious, although it may be covered under the guise of some additional and different consideration. If the substance of the contract is to be looked to, I do not see how it can be held that the contract in the first case supposed is lawful, while that in the second is unlawful.

But I would not be misunderstood about this matter. In the second case, I think C would not be without a remedy. If he could show that the contract was that the interest upon the entire principal was not to be paid at the end of each month but that only a proportionate part thereof was to be then so paid, and that either by fraud or mistake the notes were drawn for a larger amount than was contracted for upon a proper calculation, he would be entitled, upon proper pleading and proof, to have the contract reformed and to be relieved of the payment of so much of the sum represented by the notes as was not properly chargeable under the original contract.

ON MOTION FOR REHEARING.

Opinion Delivered October 21, 1901.

GAINES, CHIEF JUSTICE.—The amended motion for a rehearing sets up as a ground for setting aside the judgment of this court that Mr. Justice Williams was disqualified to participate in a decision of the case by reason of the fact that he took part in the decision of the cause in the Court of Civil Appeals for the First Supreme Judicial District, while a member of that court. It has been the uniform practice in this court for a judge who tried the case in the court below and subsequently became a member of this court to decline to sit in the case upon appeal. This has, however, proceeded from motives of delicacy and not because it has ever been thought that the judge is disqualified to sit. The grounds of disqualification of the judges of the courts in this State are specified in the Constitution and they are exclusive of all others; and the fact that a judge may have tried the case in a lower court or participated in the decision in such court is not made one of them. Const., art. 5, sec. 11; Taylor v. Williams, 26 Texas, 583. Therefore, we are clearly of the opinion that Judge Williams was not only not disqualified, but that since Judge Brown and myself could not agree upon a decision of the case, it was his duty to act. Mr. Justice Brown and I agree upon this point—Judge Williams declining to participate in the decision of it.

Upon the other grounds of the motion for a rehearing, no member of the court sees any sufficient reason for changing his opinion.

The motion is therefore overruled.