**SOUTHERN STATES MORTGAGE CO. et al. v. LYKES et al.**

**No. 4351.**

Court of Civil Appeals of Texas. Amarillo

June 17, 1935.

Rehearing Denied Sept. 9, 1935.

E. L. Klett, of Lubbock, Davidson & Mc-Mahon, of Abilene (T. J. McMahon, of Abilene, of counsel), for appellants.

Rob't A. Sowder, of Lubbock, for appellees. .

JACKSON, Justice.

February 20, 1930, O. Lykes and wife, F. E. Lykes, borrowed from the Southern States Mortgage Company, a Texas corporation, of Amarillo, $5,500.

The loan was evidenced by a series of "twenty notes or bonds called 'bond,'" each of the first eighteen for the sum of $150, due respectively September 1, 1930, and March 1st and September 1st of each year thereafter to and including March 1, 1939; No. 19 for the sum of $300 due September 1, 1939, and No. 20 for $2,500

due March 1, 1940; each bearing interest from its date until maturity at the rate of 6 per cent. per annum, payable semiannually on the first day of March and September of each year according to the coupon interest notes attached thereto, and interest after maturity at the rate of 10 per cent. per annum.

Each of this series of notes provided: "It is agreed that in case any one of the notes of which this is one of a series, or any installment of interest thereon, shall remain unpaid for ten days after the same shall become due, or in case of failure to comply with any of the agreements and conditions set forth in the deed of trust given to secure this note, then at the election of the legal holder thereof at any time thereafter, the principal sum expressed in this note, with all accrued interest, may by said holder be declared immediately due without notice and may be collected forthwith by sale under said deed of trust or otherwise as said holder may elect."

The payment of this first series of notes was secured by a first deed of trust on lot No. 13 in block No. 134 of the original town of Lubbock, and required the grantors therein to pay, before delinquent, all taxes assessed against the property. If any tax was imposed upon the notes or upon the lien, the grantors were to discharge such tax:

"Provided that if the payment of the rate of interest provided for in said bond and the tax assessments referred to in this clause shall be construed by the court finally having jurisdiction thereof, as requiring the payment on the loan of money represented by this bond, of interest in excess of ten per cent per annum, the holder of said bond shall pay such excess.

"It is further specially agreed that if default be made in the payment of said bonds or any interest thereon, or in the performance of any of the covenants or agreements herein contained, or if any of the taxes or assessments referred to in the last preceding paragraph hereof shall be imposed, then, at the option of the legal holder or holders of said bonds, the whole indebtedness secured hereby shall at once become due without notice, and may be collected by suit or proceedings hereunder."

At the same time, and as a part of the transaction, Lykes and wife executed a second series of "twenty notes called note," aggregating the sum of $407.25, the due dates of which correspond with the due

dates of the first series of notes. The first note of the second series was for the sum of $27.50, and the principal of each consecutive note was decreased 75 cents, so that the last note due March 1, 1940, was for $12.50. Each of the second series provided for interest after maturity at the rate of 10 per cent. per annum, recited it was subordinate and inferior to the first mortgage notes, and constituted a part of the interest thereon. The payment of the second series was secured by a deed of trust on the same property and stipulated in effect that if the indebtedness evidenced by the second series was paid as it became due, and the covenants and agreements made therein, together with those in the first deed of trust, should be performed, that such notes and lien should be released, but if default should be made in the payment of any part of the indebtedness or the performance of any of the covenants in the first deed of trust, then, at the option of the holder of any due and unpaid note, the property should be sold and conveyed "subject to the lien of the first deed of trust" and "to the lien of this instrument for unmatured notes or installments of the indebtedness hereby secured," or "if the amount of the interest paid and accrued on said first deed of trust bond, plus the amount of said note shall not aggregate more than ten per cent per annum on said bond for the time it shall have run, at the option of the legal owner and holder of said note, the whole amount thereof shall at once become due and payable," and the premises sold subject to the first lien and the unmatured installments of the note secured by the second lien, and the proceeds applied, first, to the payment of charges, costs, and expenses of executing the trust, second, to the payment "of such portion of the debt or other sums hereby secured as shall have become due and payable at the time of instituting such proceedings, together with interest," and, third, the balance, if any, to the grantors.

February 26, 1930, the Southern States Mortgage Company, for a valuable consideration, sold and transferred the first series of notes, with their interest coupons and the first lien securing the payment thereof, to the Pan-American Life Insurance Company, a Louisiana corporation.

On April 19, 1933, Lykes and wife instituted this suit against the appellants, Southern States Mortgage Company and Pan-American Life Insurance Company,

alleged that the loan was usurious, that they had paid $600 on the principal and $910 as interest; that $550.25 of the interest had been paid within two years immediately preceding the filing of the suit; asked for the cancellation of all the interest evidenced by the interest coupons attached to the first series of notes and the interest notes secured by the second lien; that they recover a penalty of double the $550.25 which, together with the $910, be credited on the principal of the unpaid notes.

The appellants answered jointly by general demurrer and general denial.

The Pan-American Life Insurance Company alleged that it was the owner of the first series of notes; that Lykes and wife had defaulted in the payment of principal and interest and also in the payment of the taxes levied against the property for the years 1932 and 1933, and asked for judgment for the full amount of the unpaid debt, principal and interest, taxes and attorney's fees, and a foreclosure of its lien on the lot involved against all other parties to the suit.

A jury was waived and the court adjudged the loan contract to be usurious; that the interest be canceled; that all interest payments made, including double the sum of $550.25 as penalty, in addition to the $600 theretofore paid on the principal, be credited on the indebtedness evidenced by the first series of notes; that appellants pay all costs of the suit and take nothing by reason of their cross-action.

If the contract is not usurious, the other questions presented by appellant become immaterial.

■ It will be noted that each of the bonds or notes executed for the principal debt stipulated that if it was matured by virtue of the accelerating clause, the owner could collect "the principal sum expressed in this note, with all accrued interest." This provision limits the amount collectible to the principal and interest accrued at the rate of 7 per cent. per annum as disclosed by the interest coupons and notes. Bankers' Life Co. v. Miller (Tex. Civ. App.) 68 S.W.(2d) 574. Should either of the deeds of trust contain a provision in conflict therewith, the stipulation in the note would control. Shive et al. v. Braniff Investment Co. (Tex. Civ. App.) 68 S.W.(2d) 564. However, in our opinion, no such conflict exists. The language in the first deed of trust that if de-

fault be made in the payment of "the whole indebtedness secured," and in the second "if said indebtedness and all sums evidenced by said note," does not, in the light of all the terms found in the instruments evidencing the loan transaction, necessarily provide for the collection of unearned interest. Lincoln Nat. Life Ins. Co. v. Anderson (Tex. Com. App.) 80 S. W.(2d) 294; Odell v. Commerce Farm Credit Co. (Tex. Com. App.) 80 S.W.(2d) 295; Marble Sav. Bank v. Davis (Tex. Com. App.) 80 S.W.(2d) 298.

"The court will not hold a contract to be in violation of the usury laws unless, upon a fair and reasonable interpretation of all its terms, it is manifest that the intention was to exact more interest than allowed by law." Walker v. Temple Trust Co. (Tex. Com. App.) 80 S.W.(2d) 935, 937.

The appellees predicate their contention of usury on the stipulation in the second deed of trust which provides in the event of default "if the interest paid and accrued on the first deed of trust bond, plus the amount of said note," secured by the second deed of trust, "shall not aggregate more than ten per cent per annum on said bond for the time it shall have run," then all of said note may be collected, because they assert such stipulation requires the borrower to pay in the year he defaults interest in excess of 10 per cent. for that year.

Article 5069, R. C. S., provides in part: "'Interest' is the compensation allowed by law or fixed by the parties to a contract for the use or forbearance or detention of money. * * * 'Usury' is interest in excess of the amount allowed by law."

Article 5071, R. C. S., in part provides: "The parties to any written contract may agree to and stipulate for any rate of interest not exceeding ten per cent per annum on the amount of the contract."

The law limits the compensation that may be charged and received for the use and detention of money to "not exceeding ten per cent per annum on the amount of the contract." This does not require that in order to be free of usury the 10 per cent. shall be paid in the same year the money is used by the borrower. It may in short time loans be paid in advance; Shropshire v. Commerce Farm Credit Co., 120 Tex. 400, 30 S.W.(2d) 282, 39 S. W.(2d) 11, 84 A. L. R. 1269; or it may be paid, if so contracted, in the year subsequent to the year of its use. Miner v. Paris Exchange Bank, 53 Tex. 559. The inhibition is against receiving as compensation for the use of money for the period of one year a sum exceeding 10 per cent. per annum. If the contract for the use and detention of the principal debt is not a sum greater than such debt would produce at 10 per cent. per annum from the time the borrower had the use of the money until it is repaid, it is not usurious. Galveston & H. Inv. Co. v. Grymes, 94 Tex. 609, 63 S. W. 860, 64 S. W. 778.

In our opinion the loan contract involved is not usurious, and the judgment is reversed, and the cause remanded.